UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY PAUL GIBLIN,

Petitioner,

v.

RONALD HAYNES,

Respondent.

CASE NO. 3:22-CV-5599-MJP-DWC

REPORT AND RECOMMENDATION

Noting Date: February 17, 2023

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Jeffrey Paul Giblin, proceeding *pro se* and *in forma pauperis*, filed his federal habeas petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court conviction and sentence. *See* Dkt. 1, 7. The Court concludes the state court's adjudication of the grounds raised in the Petition was not contrary to, nor an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Petition be denied and a certificate of appealability not be issued.

I.     **Background**

A.  Factual Background

On January 25, 2018, in the Superior Court of Washington for Pierce County ("trial court"), a jury found Petitioner guilty of assault in the first degree, assault in the second degree, and failure to remain at injury accident. *See* Dkt. 14-1 at 2-3 (Exhibit 1). The conviction for assault in the second degree was dismissed on the State's motion because of the first degree assault guilty verdict. *Id*. at 3-4. Petitioner was sentenced to 136 months confinement on February 9, 2018. *See id*. at 2-15. The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> On an afternoon in early September 2016, Brian Loredo, accompanied by his brother Abel, was driving his Tesla on Canyon Road in the Puyallup area, destined for north Tacoma. Also traveling on Canyon Road was the defendant, Jeffrey Giblin, driving a BMW sedan, accompanied by his 15-year-old son. Both drivers entered the on-ramp to State Route (SR) 512 at the same time.
>
> Brian would later testify that since the cars were side by side, he sped up as part of the merging process. Mr. Giblin claimed that the Tesla "zoomed forward[,] cutting us off." Report of Proceedings (RP) at 627. It is undisputed that Mr. Giblin responded by honking; he would later characterize his honking as "let[ting] them know I was there. Cautionary." *Id.*
>
> Brian and the Giblins agree that middle fingers were raised, although Brian and the Giblins disagree about who flipped off who, or did so first. The Loredos' and Giblins' versions about what took place in the time it took for the cars to travel on SR 512 to Interstate 5 (I-5), and then to I-5's 38th Street exit, diverge widely. While their competing versions of those events were relevant at trial, they are immaterial to the issues on appeal.
>
> Brian slowed down to leave I-5 at the 38th Street exit and it is undisputed that as he did, Mr. Giblin pulled in front of him and both Mr. Giblin and Brian pulled over and stopped. Brian and Mr. Giblin stepped out of their cars and argued. There was a short physical altercation, after which Mr. Giblin got back into his BMW and Brian turned back toward his own car. As Brian returned to the Tesla, Abel stepped out to speak to him, and the two stood in front of the car, where Abel asked Brian if he was okay. Speaking of Mr. Giblin, Brian said something like, "Dude's tripping. ... He's crazy," and suggested that they wait for Mr. Giblin to drive off. RP at 256.

REPORT AND RECOMMENDATION - 2

According to Brian and Abel, as they waited for the Giblin's (sic) to leave, Mr. Giblin revved his engine and then suddenly sped in reverse toward the two men. Brian was able to jump sideways, out of the way, but Abel, who was standing near the center of the Tesla, could only leap up in an effort to avoid being hit. Unable to leap high enough, his leg was crushed between the BMW and the front bumper of the Tesla. No sooner had Mr. Giblin struck Abel and the Tesla than he put the BMW into forward gear and drove off.

A passing motorist, Kome Eteuati, saw the collision and Mr. Giblin[']s immediate departure and decided to follow the BMW to "get some justice for the guy that ... [got] hit." RP at 122. He honked his horn in an effort to get the BMW to stop. When that did not work, he used his cell phone to take pictures and a short video of the fleeing BMW and its license plate. He returned to the scene of the collision, where Abel had used Brian's belt as a tourniquet to stop the bleeding and 911 had been called. Abel was taken to the hospital where his leg was amputated below the knee. Mr. Eteuati's video was relied on by the Washington State Patrol to publicize its search for the BMW and its driver. Four days after the accident, Mr. Giblin contacted police. He was charged with first degree assault and failure to remain at the scene of an accident involving an injury.

At Mr. Giblin's jury trial, the first three witnesses called by the State were Mr. Eteuati and two other individuals who had been traveling in the vicinity of the BMW and the Tesla for 10 or 15 minutes leading up to the collision. Their testimony was largely damaging to the defense.

During a break following most of Mr. Eteuati's direct testimony, the State moved to prevent cross-examination about a statement Mr. Eteuati volunteered during a telephonic interview with a detective. Referring to a transcript of the taped interview, the prosecutor explained:

> [Mr. Eteuati] volunteered ... that "I honestly believe, sir, his intention was to hit the vehicle and drive off. But didn't realize the guy was between both cars, you know. It might have been an accident, but it was still like wrong, man."
>
> The detective responded with, "Right. So you believe his intention was to hit the car?"
>
> [Mr. Eteuati's] Answer: "Correct. Yes, I don't think his intention was to crush the guy, you know."

RP at 131-32.

The prosecutor told the court that later in the detective's interview of Mr. Eteuati, the detective asked, "Could you see if the driver of the first car, the BMW, was looking when he backed up at all or could you tell?" and Mr. Eteuati's answer as

recorded in the transcript is "Honestly, I don't—I don't think I was. I mean, honestly, sir, I don't think he ...." RP at 132. The prosecutor told the court that when interviewed by the defense, Mr. Eteuati indicated he did not see Mr. Giblin look back while driving in reverse but Mr. Giblin could have been looking in one of his mirrors. Summarizing, the prosecutor said, "I believe that the witness doesn't know. In other words, conceivably it could have been happening, but he doesn't know." *Id.*

The prosecutor told the court that when she asked Mr. Eteuati for the basis of his belief that Mr. Giblin did not intend to hit Abel, "[H]e didn't see anything." RP at 133. She said she was clear with Mr. Eteuati that she needed to know if his statement was "based upon something you saw and observed," but "he has no idea. He simply has no idea." *Id.* The prosecutor posited that Mr. Eteuati's belief could come "frankly from his desire or wish that that would be the case." RP at 132.
When defense counsel responded, she did not dispute the prosecutor's characterization of Mr. Eteuati's statements when interviewed. She argued, however, that Mr. Eteuati's statements "go[ ] to his state of mind," and since he made "fairly clear statements" about what he "honestly believ[ed]" "that's monumental to the issues in this case and Mr. Giblin's defense and his right to a fair trial." RP at 134.

The trial court granted the motion to exclude Mr. Eteuati's statements about Mr. Giblin's intent, explaining, "Not only does he lack any personal knowledge that could inform him of that, I also think that would be an improper comment on the defendant's guilt and it invades the province of the jury." RP at 135. The court told the parties it would allow the defense to inquire whether Mr. Eteuati knew if Mr. Giblin looked in his mirror or saw anything behind the BMW.

When Brian Loredo later testified, the State touched on the defense theory that Mr. Giblin put his BMW in reverse accidentally, asking the following questions and getting the following responses:

[Prosecutor:] Was there anything about the way or the manner in which the car backed up that gave you any concern for it being out of control or inadvertent or—

[Brian:] Well, it just kept going.

[Prosecutor:] What do you mean?

[Brian:] Um, well, you know, if you—I guess if somebody—to me there was no question as far as the intent.

[Prosecutor]: Why do you say that?

[Defense Counsel]: I'm going to object, Your Honor. It's a statement on the ultimate issue.

[Prosecutor]: Asking for his opinion based upon what he observed.

THE COURT: I'm going to overrule the objection. You can answer.

[Prosecutor:] Based upon what you observed, why do you think that?

[Brian:] Because, you know, the car if you—let's say somebody accidentally puts a car reverse, you know, when you step on the gas, once you realize— I've done it before. I've done it. In my car it's weird because the way the handle is, it's not a shifter. I've done it several times in my car. As soon as I've done that, I know to stop. But it just seemed that there was no intent to stop. It just kept going and kept going and kept going until it hit my car.

RP at 266-67.

Mr. Giblin's teenaged son was called as the last witness in the State's case and provided testimony largely supportive of his father. In the defense case, Mr. Giblin testified on his own behalf. The defense conceded that Mr. Giblin was guilty of failure to remain at an accident but vigorously denied that he intentionally put his car in reverse or intended to hit Abel.

The jury found Mr. Giblin guilty of first degree assault and failure to remain at the scene of an accident. [Fn. It also found him guilty of the lesser included charge of second degree assault, which the court dismissed.]. The court imposed a total sentence of 136 months, the high end of the standard range for the assault count.

*State v. Giblin*, 11 Wash. App. 2d 1015 (2019); Dkt. 14-2 at 17-23 (Exhibit 2).

    B.  Procedural Background

        1.  *Direct Appeal*

Petitioner challenged his conviction and sentence on direct appeal. *See* Dkt. 14-1 at 33-48 (Exhibit 3), 84-92 (Exhibit 5). The state court of appeals affirmed Petitioner's convictions. *Id*. at 17-31 (Exhibit 2). Petitioner sought discretionary review by the Washington State Supreme Court ("state supreme court"). *See id*. at 94-120 (Exhibit 6). On April 1, 2020, the state supreme court denied Petitioner's petition for review without comment. *Id*. at 122 (Exhibit 7). The state court of appeals issued its mandate. *Id*. at 124 (Exhibit 8). On October 13, 2020, the United

1    States Supreme Court denied Petitioner's petition for a writ of certiorari. *Giblin v. Washington*,

2    141 S.Ct. 567 (2020).

3         2.   *Personal Restraint Petition*

4         On July 16, 2021, Petitioner sent a motion to correct judgment and sentence to the trial

5    court. Dkt. 14-1 at 126-71 (Exhibit 10). The motion was transferred to the state court of appeals

6    to be considered as a personal restraint petition ("PRP") seeking state post-conviction relief. *Id*.

7    at 173-74 (Exhibit 11). The state court of appeals dismissed the PRP on March 25, 2022. *Id*. at

8    257-58 (Exhibit 13). Petitioner sought discretionary review from the state supreme court, which

9    was denied by the deputy commissioner of the state supreme court on May 3, 2022. *Id*. at 260-66

10   (Exhibit 14), 268-77 (Exhibit 15), 279-82 (Exhibit 16). Petitioner moved to modify the

11   commissioner's decision. *Id*. at 284-93 (Exhibit 17), 295-99 (Exhibit 18). The state supreme

12   court denied the motion to modify without comment and the state court of appeals issued the

13   certificate of finality on July 19, 2022. *Id*. at 301 (Exhibit 19), 303-04 (Exhibit 20).

14         3.   *Federal Petition*

15         On August 17, 2022, Petitioner initiated this case. Dkt. 1. In his Petition (Dkt. 7),

16   Petitioner raised the following two grounds for relief:

17      1.  Where the State failed to prove assault in the first degree beyond a reasonable doubt,
            Petitioner is actually innocent of the crime.
18

19      2.  The charging inform[ation] is fatally defective where it omits any victim identifiers for a
            crime against a person.

20   Dkt. 7. On November 21, 2022, Respondent filed, and served on Petitioner, an Answer to the

21   Petition. Dkt. 13. In the Answer, Respondent asserts the state court's adjudication of the grounds

22   raised in the Petition was not contrary to, nor an unreasonable application of, clearly established

23   federal law. *Id*. Petitioner filed a traverse on December 21, 2022. Dkt. 15.

24

1  **II.    Discussion**

2      Respondent maintains the state courts' adjudication of the grounds raised in the Petition

3  was not contrary to, nor an unreasonable application of, clearly established federal law. Dkt. 13.

4  A.  Standard of Review

5      Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the

6  basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a

7  decision that was contrary to, or involved an unreasonable application of, clearly established

8  Federal law, as determined by the Supreme Court of the United States." In interpreting this

9  portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to"

10 clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion

11 opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts

12 "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite

13 result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

14      Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply

15 because that court concludes in its independent judgment that the relevant state-court decision

16 applied clearly established federal law erroneously or incorrectly. Rather, that application must

17 also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An

18 unreasonable application of Supreme Court precedent occurs "if the state court identifies the

19 correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts

20 of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court

21 decision involves an unreasonable application of Supreme Court precedent "'if the state court

22 either unreasonably extends a legal principle from [Supreme Court] precedent to a new context

23 where it should not apply or unreasonably refuses to extend that principle to a new context where

24

1    it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529

2    U.S. at 407).

3        The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas

4    courts to presume the correctness of state courts' factual findings unless applicants rebut this

5    presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of

6    state court decisions under §2254(d)(1) is "limited to the record that was before the state court

7    that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

8        B.   Sufficiency of Evidence (Ground 1)

9        In Ground 1, Petitioner contends the State failed to prove assault in the first degree and

10   therefore he is actually innocent. Dkt. 7 at 5. Petitioner states that he was charged with both

11   assault in the first degree and assault in the second degree based on a single incident. *Id*. He

12   asserts that, in the amended information, the State alleged second degree assault was committed

13   "under circumstances not amounting to assault in the first degree." *Id*. Petitioner argues the jury,

14   therefore, could not find Petitioner guilty of both first degree and second degree assault. *Id*.

15       The Constitution forbids the criminal conviction of any person except upon proof of guilt

16   beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of

17   insufficiency of the evidence to support a conviction, the reviewing court must decide "whether,

18   after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

19   could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

20   *Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what

21   inferences to draw from the evidence presented at trial, requiring only that jurors 'draw

22   reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650,

23

24

1  655 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to believe the State's

2  evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

3       Here, the state supreme court found there was sufficient evidence to convict Petitioner of

4  first degree assault, stating:

5      His main argument is predicated on the fact that the State charged him with first
and second degree assault on the basis of the same act and alleged in the charging

6      document that the second degree assault was committed "under circumstances not
amounting to assault in the first degree." *See* RCW 9A.36.021(1). Mr. Giblin

7      appears to argue that, since the jury found him guilty of second degree assault, it
necessarily found that he committed the assaultive act "under circumstances not

8      amounting to assault in the first degree." He therefore urges he is actually innocent
of first degree assault. But the quoted language, while taken from the second degree

9      assault statute, is not an element of that offense but only serves to explain the
distinctions between second degree assault and first degree assault. *State v. Keend*,

10     140 Wn. App. 858, 872, 166 P.3d 1268 (2007). As part of the charging document,
therefore, this language was surplusage. That phrase was *not* included in the to-

11     convict instruction or in the instruction defining second degree assault, and thus the
jury was not required to find that Mr. Giblin's conduct did not amount to first degree

12     assault. Rather, the jury was instructed only that to find Mr. Giblin guilty of second
degree assault, it had to find that he intentionally assaulted the victim and thereby

13     recklessly inflicted substantial bodily harm or assaulted the victim with a deadly
weapon. Finding Mr. Giblin guilty of that crime as instructed did not have the effect

14     of finding he did not commit first degree assault, since the jury still could have
found that he committed first degree assault as well, the main distinguishing

15     features of which are assaulting another with intent to inflict great bodily harm and
actually inflicting such harm or assaulting another with a deadly weapon or other

16     force likely to produce great bodily harm.

17 Dkt. 14-1 at 280-81.

18      Petitioner does not assert there was insufficient evidence presented during the trial to

19 show he is guilty of assault in the first degree. Dkt. 7. Rather, he asserts the jury found him guilty

20 of assault in the second degree and, because the amended information stated assault in the second

21 degree was "under circumstances not amounting to assault in the first degree," he could not be

22 found guilty of assault in the first degree. *Id*.

23

24

1    A review of the record shows the jury was not instructed, nor does the statue require, that

2    to be guilty of assault in the second degree the jury must find the circumstances did not amount

3    to assault in the first degree. *See* Dkt. 14-1 at 162-67. Rather, the jury was instructed that, to find

4    Petitioner guilty of assault in the second degree, they had to find, beyond a reasonable doubt,

5    Petitioner intentionally assaulted A.L. and thereby recklessly inflicted substantial bodily harm or

6    assaulted A.L. with a deadly weapon. *Id*. at 163. To find Petitioner guilty of assault in the first

7    degree, the jury was instructed that they had to find, beyond a reasonable doubt, Petitioner

8    assaulted A.L. with the intent to inflict great bodily harm and the assault was committed with a

9    deadly weapon or by a force or means likely to produce great bodily harm or death or resulted in

10   the infliction of great bodily harm. *Id*. at 165. As the state court found, the jury could, therefore,

11   find the evidence showed both assault in the first degree and assault in the second degree.

12   Additionally, Petitioner's conviction for assault in the second degree was dismissed after the jury

13   verdict in light of the conviction for assault in the first degree. *Id*. at 147. Thus, Petitioner was

14   not sentenced for both first and second degree assault arising from the same incident.

15   Importantly, Petitioner has not identified any United States Supreme Court authority

16   supporting his position that he could not be found guilty of both assault in the first and assault in

17   the second degree arising from the same incident. *See* Dkts. 7, 15. Rather, "[p]rosecutors should

18   not be discouraged from charging defendants with greater and lesser included offenses in

19   separate counts under the same indictment." *United States v. Jose*, 425 F.3d 1237, 1247 (9th Cir.

20   2005). "[W]hen a jury convicts on both the greater and lesser included offenses, absent a clear

21   indication by Congress that it intended to allow punishment for both offenses, the district court

22   should enter a final judgment of conviction on the greater offense and vacate the conviction on

23   the lesser offense." *Id*. This is precisely what happened here. Petitioner was found guilty of both

24

1  first and second degree assault under separate counts under the same amended information. The

2  trial court dismissed the second degree assault conviction and proceeded to sentencing on the

3  first degree assault conviction only.

4       For these reasons, Petitioner has failed to demonstrate the state court's conclusion that

5  Petitioner was not innocent of assault in the first degree based on the jury finding him guilty of

6  assault in the second degree was contrary to, or an unreasonable application of, clearly

7  established federal law nor was it based on an unreasonable determination of the facts in light of

8  the evidence presented in the state court proceeding. Accordingly, Ground 1 should be denied.

9       C.  Defective Charging Documents (Ground 2)

10      In Ground 2, Petitioner asserts the amended information – the charging document – was

11  fatally defective because it did not include any victim identifiers. Dkt. 7 at 7.

12      The Sixth Amendment to the United States Constitution guarantees a criminal defendant

13  the fundamental right to be clearly informed of the nature and cause of the charges against him.

14  *See* U.S. Const. amend. VI; *see also Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle

15  of procedural due process is more clearly established than that notice of the specific charge, and

16  a chance to be heard in a trial of the issues raised by that charge, if desired, are among the

17  constitutional rights of every accused in a criminal proceeding in all courts, state or federal."). A

18  charging document is sufficient to inform a defendant of the charges against him if it (1) contains

19  the elements of the offense charged and fairly informs a defendant of the charge against which he

20  must defend, and (2) enables a defendant to plead an acquittal or conviction in bar of future

21  prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

22      The Ninth Circuit has also found that adequate notice of the nature and cause of the

23  offense may be provided through a source other than the primary charging document. *See*

24

REPORT AND RECOMMENDATION - 11

1    *Sheppard v. Rees*, 909 F.2d 1234, 1236, fn.2 (9th Cir. 1990); *Gautt v. Lewis*, 489 F.3d 993, 1009

2    (9th Cir. 2007). Notice may be provided by way of a complaint, an arrest warrant, or a bill of

3    particulars. *Sheppard*, 909 F.2d at 1236, fn.2. Notice may even be provided during the course of

4    trial by way of the prosecution's opening statement or through the presentation of substantial

5    evidence. *See Stephens v. Borg*, 59 F.3d 932 (9th Cir. 1995); *see also Murtishaw v. Woodford*,

6    255 F.3d 926, 953 (9th Cir. 2001) (defendant received adequate notice of the prosecution's

7    felony-murder theory from the prosecutor's opening statement, the evidence at trial, and the jury

8    instructions conference); *Calderon v. Prunty*, 59 F.3d 1005, 1008 (9th Cir. 1995) (defendant

9    received adequate notice of prosecution's lying-in-wait theory from the prosecutor's opening

10    statement and argument at motion for acquittal).

11        At issue here are the first and second degree assault charges. *See* Dkt. 7 at 7. In the

12    January 8, 2018 amended information, Petitioner was charged as follows:

13       Count I . . . JEFFREY PAUL GIBLIN [is accused] of the crime of ASSAULT IN
        THE FIRST DEGREE, committed as follows:
14

15       That JEFFREY PAUL GIBLIN, in the State of Washington, on or about the 10th
        day of September, 2016, did unlawfully and feloniously, with intent to inflict great
        bodily harm, intentionally assault another with a deadly weapon or by any force or
16       means likely to produce great bodily harm or death, contrary to RCW
        9A.36.011(1)(a); or with intent to inflict great bodily harm, intentionally assault
17       another and inflict great bodily harm, contrary to RCW 9A.36.011(l)(c), and against
        the peace, and dignity of the State of Washington.
18

19       . . . .

20       Count II . . . JEFFREY PAUL GIBLIN [is accused] of the crime of ASSAULT IN
        THE SECOND DEGREE, a crime of the same or similar character, or a crime based
        on the same conduct or on a series of acts connected together or constituting parts
21       of a single scheme or plan, and/or so closely connected in respect to time, place and
        occasion that it would be difficult to separate proof of one charge from proof of the
22       others, committed as follows:

23       That JEFFREY PAUL GIBLIN, in the State of Washington, on or about the 10th
        day of September, 2016, did unlawfully and feloniously, under circumstances not
24

1       amounting to assault in the first degree: (c) assault another with a deadly weapon, or (a) did intentionally assault another and thereby recklessly inflict substantial

2       harm, contrary to RCW 9A.36.021, and against the peace and dignity of the State of Washington, and the crime is aggravated by the following circumstance: as to

3       (a), pursuant to RCW 9.94A.535(2)(y), the victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense.

4 Dkt. 14-1 at 228-29.

5

6       In finding the amended information was not defective, the state supreme court found:

7       Mr. Giblin also contends that the charging document was fatally defective in not naming the victim of the assault. But the name of the victim is not an essential

8       element of the crime of assault. *State v. Plano*, 67 Wn. App. 674, 679-80, 838 P.2d 1145 (1992). If the charging document is vague about a supporting fact like the

9       victim's name, the remedy is to demand a bill of particulars. *State v. Laramie*, 141 Wn. App. 332, 339-40, 169 P.3d 859 (2007).

10 Dkt. 14-1 at 281.

11       State courts are the ultimate expositors of their own law, and their construction of state

12 law is binding on the federal courts. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, the

13 state court's conclusion that the charging document was sufficient, under state law, to provide

14 Petitioner with adequate notice of the charges against him is binding on this Court. Moreover,

15 Petitioner was on notice of victim identifiers in the original information, filed September 15,

16 2016, in the declaration for determination of probable cause, filed September 15, 2016, and in

17 the State's trial brief, filed January 9, 2018, the day after the amended information was filed. *See*

18 Dkt. 14-1 at 140-41, 169-70, 211-30. As such, Petitioner was on notice of the identity of the

19 victim involved in the assault charges prior to trial and prior to the State filing the amended

20 information. Moreover, Petitioner has not identified any United States Supreme Court authority

21 that requires state charging documents to include victim identifiers in a crime against a person.

22 *See* Dkts. 7, 15.

23

24

REPORT AND RECOMMENDATION - 13

1    For these reasons, Petitioner has failed to demonstrate the state court's conclusion that the

2    amended information was not defective was contrary to, or an unreasonable application of,

3    clearly established federal law. Accordingly, Ground 2 should be denied.

4    **III.    Evidentiary Hearing**

5        The decision to hold an evidentiary hearing is committed to the Court's discretion.

6    *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

7    hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

8    entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

9    available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

10   state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not

11   entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

12   record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

13   court is not required to hold an evidentiary hearing." *Id*. The Court does not find it necessary to

14   hold an evidentiary hearing because, as discussed in this Report and Recommendation,

15   Petitioner's grounds for relief may be resolved on the existing state court record.

16   **IV.    Certificate of Appealability**

17       A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

18   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

19   from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue

20   . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right."

21   28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason

22   could disagree with the district court's resolution of his constitutional claims or that jurists could

23

24

1   conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

2   *El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

3          No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

4   would conclude the issues presented in the Petition should proceed further. Therefore, the Court

5   concludes Petitioner is not entitled to a certificate of appealability with respect to the Petition.

6   **V.    Conclusion**

7          For the above stated reasons, the Court concludes Petitioner has not shown the state

8   courts' adjudication Grounds 1 and 2 was contrary to, or an unreasonable application of, clearly

9   established federal law. The Court also finds an evidentiary hearing is not necessary. Therefore,

10  the Court recommends the Petition be denied and a certificate of appealability not be issued. As

11  the Court recommends denying the Petition and certificate of appealability, the Court also

12  recommends Petitioner should not proceed *in forma pauperis* on appeal.

13         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

14  fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P.

15  6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

16  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

17  objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

18  *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

19  imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on

20  February 17, 2023, as noted in the caption.

21         Dated this 30th day of January, 2023.

22

23  _____

24  David W. Christel
    United States Magistrate Judge